Case number 22-5125, Air Excursions LLC at Ballant v. Janet L. Yellen, in her official capacity as Secretary of the United States Department of the Treasury and United States Department of the Treasury. Mr. Nankin for the Ballant, Mr. Jett for the Evelyns. Mr. Nankin, good morning. Good morning. May it please the court. My name is Kenneth Nankin. I'm the attorney for the appellant Air Excursions LLC. The court should rule in favor of Air Excursions for three reasons. First, Air Excursions has standing under the Administrative Procedure Act. The company is an actual competitor in the relevant marketplace, and Treasury's actions harmed it. The Judicial Court got this right. Second, Air Excursions' APA claims are reviewable by this court, as well as the court below. There are meaningful standards for judicial review provided by the payroll support program agreements. And third, Air Excursions' claims on the merits are plainly plausible. Otherwise, the district court incorrectly drew inferences in favor of Treasury, not Air Excursions. Because Air Excursions has much more standing than a group of prospective sheep and goat herders, I'd like to focus my first argument on reviewability. Well, before you turn to that, can we talk a little bit about standing? So I'm having a little trouble understanding what the injury is here that's been suffered by Air Excursions. Your Honor, the injury is that there were subsidies, the CARES Act payments flowed in. And now the competitor float charged below-market rates, making it more difficult for Air Excursions to enter into the competitive marketplace, which it eventually did. But then it's competing against a company that's charging below-market fares. So Air Excursions also received funds from the government. That's correct, Your Honor. Right. And Air Excursions has not made any allegations that float improperly, that float was ineligible to receive funds as an air carrier? Your Honor, float was ineligible because it didn't meet the PSP agreement requirements. It wasn't the signatory entity. No, but under the statute, it was an air carrier that could have been eligible for funds if it had applied. Under the statute, yes, Your Honor. It was just air carrier. That was the only requirement. And so in the complaint, there are no specific allegations about the below-market rates, like what the rates were, you know, to what extent they were below market or what type of competitive harm was actually suffered here. I mean, there's nothing even really specific alleged in that regard. Yes, Your Honor, that's correct. Insurance are just raw numbers. We haven't put a number on it. But that analysis has been done. As a matter of pleading, I don't believe that Air Excursions was actually required to kind of go to that extent and to kind of put actual numbers to it. But these analysis have been performed and it actually did harm the below-market rates, did harm Air Excursions, made it more difficult to enter the competitive marketplace, which it did, and is still now having to compete at a disadvantage because the market rates are lower. I just don't see any facts in the complaint that support that conclusion. Other than just the, you know, conclusory remarks that they were below market rates. Well, Your Honor, there are, like I stated before, you're correct, there are no numbers. But those analysis have been performed. And it made it more difficult because my client was dealing with a situation where the rates were below market because Float did receive these subsidies, which allowed them to charge the below market rates. There were also difficulties in leasing space, wholly beyond kind of the numbers, difficulties in leasing space at the airport. That was alleged as well in the complaint, that they couldn't get the space that they wanted at the Anchorage airport. There were other business opportunities that they lost out on, those wholly beyond the numbers in terms of standing. There were other problems as well that my client did face from Float's competitive position in the marketplace, Your Honor. Well, what about, I mean, under our case law, there are a number of cases that suggest simply getting a windfall from the government doesn't confer competitor standing. Simply receiving a windfall? Well, I mean, which is in effect what you think happened here to Float, right? Float got a windfall, was not entitled to this money. It received, you know, payments from the government. It did put my client at a disadvantage under the very generous standing definitions and precedent under Mendoza versus Perez. I think that plainly, and the district court got this right, the Treasury's actions did actually harm it. So I do think that there is standing. Well, let me ask you about prudential standing. And I don't want you to feel you're being beat up about standing, but this is such a discreet statute and almost idiosyncratic. I don't see where you're within the zone of interest. I know the district court said a layoff is a layoff, but that's not what the statute says. It's directed at pandemic relief. The title of Section 9772 is Pandemic Relief for Aviation Workers. And the name of the act is Coronavirus Aid Relief and Economic Security Act. I don't see how you're within the zone of interest. Your Honor, I do believe in the matter of prudential standing that we're within the zone of interest. Air excursions' whole objective is to make the Anchorage Southwest Alaska air passenger market more competitive to curtail the anti-competitive conduct of float. But that wasn't the reason for the relief act. Your Honor, I disagree. And it's quoted in our brief states that one of the objectives as to this particular title of the CARES Act was to ensure the health of the aviation industry. And curtailing the anti-competitive conduct of float plainly supports that objective, Your Honor. But it doesn't say that. I mean, it's talking about this virus, and that's all it's talking about. This was a quote from the Secretary of the Treasury at the time describing what was the objective of these airline worker support provisions of the CARES Act. And that's exactly what air excursions is trying to do, curtail anti-competitive conduct so it can be a healthier aviation industry. If I could just turn to reviewability, I would believe that air excursions stands judicially reviewable under the APA. First, there's no provision of the CARES Act or any other statute that bars APA review. And secondly, there are judicial manageable standards review under the APA. These standards are the actual terms of the payroll support program agreements, which Treasury actually drafted. They're every bit as usable and manageable as a standard, as a statute or regulation, or an agency's informal policy statement. Why do these PSP agreements provide judicially manageable standards review? There are two reasons. First, contracts matter. Contracts with the linchpin involve commercial activity in society. But don't take my word for it, it's even in the Constitution. Article 1, Section 10 of the Constitution prohibits a state from passing any law impairing the obligation of contracts. Second, the district court knows how to interpret contracts. It does that all the time. It did so in a decision in the National Association of Realtors versus United States case issued just on January 25th, less than two weeks ago. To quote that court, the parties dispute the terms of their settlement agreement. Thus, before the court can enforce the agreement, it must first determine its terms. This task is essentially one of contract interpretation. And then, in that case, the district court went on to interpret the contract. Here, the district court is equally able to do just the same, in this case, using the PSP agreements that Treasury itself drafted. Mr. Nankin, maybe a contract can provide a standard, but why would Air Excursions get the benefit of the standards in a contract between Treasury and Corvus? Right? So, I mean, Air Excursions is not even a third-party beneficiary to that contract. That is true. That is true. Air Excursions is not a third-party beneficiary. But it was harmed by these actions, and that's what the Administrative Procedure Action Act does. It allows a party who's been harmed, that's the issue of standing, to challenge these kinds of actions. You don't have to be a third-party beneficiary. The standards can be used by anyone who is harmed by Treasury's actions. And so I believe that it goes back to the issue of standing. Air Excursions was clearly not a party to these PSP agreements, was not a third-party beneficiary. But it was harmed by Treasury's actions under those agreements, Your Honor. Can you point to a case in which a party not to a – where a contract has provided the standard of review for it to use by a party that was not a party to the contract? I believe that was the DeVos case, Your Honor, that was cited. But I don't see – and the district court wasn't able to kind of point to it, nor was Treasury able to kind of point to any precedent that would be barring the application or the use of a contract as additional manageable standard for review by a non-party to the contract. In my mind, it's just as clear and well written as a statute or regulation or an agency policy statement. It's clearly reviewable. And, in fact, the district court did actually get into it and review its terms. The – as to the reviewability argument, the district court's other concern was how could it review an agreement that gave Treasury so much discretion? Yes, I agree that under these PSP agreements, Treasury had lots of discretion. It could increase funding amounts. It could waive requirements imposed on a recipient. But Treasury's discretion had limits. Agreement did not give Treasury discretion to disperse funds to a non-party stranger to the agreement. And that's a district court case. That's a Confederated Tribes case, Your Honors, stating in part, while the Secretary's decisions as to how much could it disperse might not be reviewable, his decisions concerning to whom to disperse those funds most certainly is. That is, to disperse funds to a non-party stranger to the agreement who's not their signatory, who's not the successor, who's not the assignee, that's arbitrary and capricious and an abuse of discretion. In the reviewability, I'd like to discuss the merits. Eric's assertions plainly stated a plausible APA claim. Treasury dispersed over $30 million to a company that had absolutely no legal right to the funds. In my view, that's the dictionary definition of arbitrary and capricious. Treasury dispersed the funds to float, not to Corvus Airlines, Inc. That's amended complaint paragraph 38, not a motion to dismiss. And that's the procedural posture of the case before the district court. The record shows that the checks were made out to Corvus and that Corvus deposited the checks in its own account. So, where do you get the argument or where do you get the assertion from? What evidence or what is in the record to indicate that the money was dispersed to float? Your Honor, we firmly believe the funds went right to float. I mean, that was the whole point of the asset purchase agreement. Making sure that float owned the account into which the funds went into. The funds went right to float. Float paid its own employees, didn't pay the former employees of Corvus Airlines, Inc. That's an argument that float, that Corvus shouldn't have transferred the payments to float. But that's got nothing to do with whether Treasury made any kind of an error in dispersing the funds to Corvus to begin with. I don't get it. Your Honor, the funds went directly to float, Your Honor. That's not accurate. That is not accurate. The record shows that the funds went directly to Corvus and were deposited in Corvus's account, bank account. Corvus, at that point, simply didn't. If you think it's otherwise, give me the page in the appendix that indicates support for what you're saying. Your Honor, I don't have the page in the appendix. Well, I do. I do. I do. Take a look at appendix 286 at the top. Your Honor, yes, I'm at the appendix 286, Your Honor. Yes, yes. I don't see where there's a copy of a check or at least a page I want. The instructions indicate that the money was to be deposited in the same account as the first payment, and that was Corvus's account. Does it not say that? It says, yes, Your Honor, it's the same account used for PSP-1. But it's almost kind of like somebody giving like a newborn as a gift a $10,000 check. Well, yes, it may be tabled in the name of the newborn, but that money is going right to the parent. So that is the situation here. Technically, yes, it may have been a check tabled to Corvus Airlines, Inc., but that money went right to Float, and that's how it was used. So at that point, that is the whole point of the asset purchase agreement was to give Float the unfettered right to have that account, to own the account, and own the funds. So that's exactly where the funds went, Your Honor. I don't have transfer information. I don't have a copy of any wire transfer or a check that shows that the funds were paid directly to Float. I don't have the information showing that it went from – specifically went from Corvus Airlines to Float. But that was the whole point of the asset purchase, Your Honor. And we're convinced, and we now certainly on information believe that the funds ended up in Float. So otherwise, why do the asset purchase agreement, the biggest asset, was Corvus Airlines, Inc., entitlement to receive these CARES Act funds, Your Honor? All right. Mr. Denker, we'll give you a couple minutes in reply. Thank you. And if you would, on reply, let me know your best case on the zone of interest. Yes, I will, Your Honor. Thank you. All right. Mr. Jett. Good morning, Your Honors. Adam Jett on behalf of the United States. May it please the Court. As I think the various colleagues with my friend this morning have illustrated, this is an incredibly anomalous lawsuit where you have an airline based on essentially nothing but conclusory terms like allow, claiming that it's somehow being harmed by the distribution of funds to another airline that may or may not operate in the same market. Invoking a statute that has nothing to do with competition exists for a very specific purpose that is clearly not being pursued in this case. And where any claim to reviewability is based on a contract they have no right to enforce. And for that reason, I mean, I think that this case is just essentially overdetermined. There's a number of independent reasons that this is just not a properly judicial suit. And unless the Court has any other questions, we're happy to rest on our briefs. Thank you. Oh, I'm sorry. Do you have any questions? Thank you. Thank you. Thank you. Yes. Your Honor, the zone of interest test is not specifically demanding respect to matters rising under the APA. The benefit of any doubt goes to the plaintiff. That's the Indian River County, Florida case, D.C. Circuit case, 945 Bedford, 515, Your Honor. And also, more recently, the CSL Plasma Inc. v. U.S. Customs and Border Protection case, 33 Bedford, 584, this Court last year, 2022. And, Your Honor, the air services interest certainly do coincide with that of the CARES Act on the next page in our reply brief, page 11. It actually quotes the quote from the Secretary of the Treasury that the financial assistance the Treasury is providing under Title IV of the CARES Act is essential to help American workers and to preserve our aviation industry. And that completely dovetails with air services interest in the case, which is to protect the health of the aviation industry by trying to curtail float and its anti-competitive conduct in that Anchorage Southwest Alaska air passenger market, Your Honor. That's a very interesting argument. I mean, are you aware of any cases in which a person has been within the zone of interest for a general spending statute? Because the CARES Act is essentially just a large spending statute, a welfare transfer to particular entities. So basically, if you are one of those entities, you're within the zone of interest to ensure that your competitors don't get the funds, that would dramatically expand APA suits under spending statutes. Your Honor, I do believe that it's more than a simple lump sum appropriation. It was for a specific purpose, and this Title IV was for the health of the aviation industry. So I do think air excursions has a definite specific interest, and this interest dovetails with that of Title IV of the CARES Act just to help ensure the health of the aviation industry in particular as it relates to the workers. All right, Judge Randolph, any questions? No. Okay, thank you. Thank you, Your Honor. Thank you. Thank you. We'll take a brief recess.
judges: Henderson, Rao, Randolph